1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2
Joel D. Smith (State Bar No. 244902)
Sean L. Litteral (State Bar No. 331985)

3
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

4
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700

5
Email:  ltfisher@bursor.com
          jsmith@bursor.com

6
          slitteral@bursor.com

7
*Attorneys for Plaintiff*

8

9

10
**UNITED STATES DISTRICT COURT**

11
**NORTHERN DISTRICT OF CALIFORNIA**

12

13
BARRY RICHARDS, individually and on behalf of all others similarly situated,

Case No.

14
            Plaintiff,

**CLASS ACTION COMPLAINT**

15
      v.

**JURY TRIAL DEMANDED**

16
APPLE INC.,

17
            Defendant.

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL ALLEGATIONS

1.      This is a putative class action filed by Plaintiff Barry Richards ("Plaintiff") on behalf of himself and all others similarly situated against Defendant Apple Inc. ("Apple" or "Defendant") for the manufacture, marketing, detailing, distribution, and sale of Apple HomePods that were rendered inoperative by a defective software update issued by Apple.

2.      The Apple HomePod is a wireless "smart speaker" for home audio.  It is designed to integrate with an Apple iPhone, and multiple HomePods can be wirelessly linked throughout a home.  The HomePod also serves as a remote hub for other Apple devices that can control lighting, thermostats, or other functions.

3.      Apple first began selling HomePods in January or February 2018.

4.      The original HomePod had a premium $349 price tag that matched Apple's marketing angle, which presented the HomePods as a music-first device with excellent sound quality.

5.      However, in March 2021, Apple officially discontinued the original HomePod and began selling the HomePod mini, which is a smaller iteration of the original HomePod.

6.      After March 2021, Apple continued to issue software updates for the original Home Pod.

7.      In approximately May 2021, Apple released software update 14.6 for original HomePods.

8.      On its website, Apple told consumers that software update 14.6 "includes general performance and stability improvements."

9.       Apple's software updates upload to HomePods automatically, including update 14.6.

10.     After update 14.6 was issued, however, many Apple HomePod owners found that the software update "bricked" their HomePods, meaning they ceased working and were useless.

11.     Many consumers complained about this problem on Redditt and other online forums.  As one consumer described, "When it's plugged in, doesn't power up – the top doesn't light up or respond to touch."  Other owners chimed in and said that their speakers could power up,

but could not otherwise function.  Another HomePod owner noted:  "Same problem with my stereo pair, although the one HomePod didn't just 'die' – it became unresponsive with constant flashing volume buttons.  Same result, though."  Another HomePod owner explained that a newly opened HomePod was set up, updated to 14.6, and then it lost connection. A hard reset caused the LED to turn red and the volume lights to blink, but it was non-functional.  There were many more complaints online; the aforementioned complaints are only examples.

12.    Apple monitors warranty claims and customer complaints to track trends and recurring issues with its products.

13.    Apple received an unusually high number of complaints about the original HomePods becoming inoperative after Apple issued software update 14.6.

14.    However, by this time, Apple had already discontinued the original Apple HomePod, and thus had little incentive to prioritize a solution.

15.    Although Apple caused the problem with the HomePods, Apple's policy was to deny any relief for owners of products that were past their 1-year warranty.  One frustrated HomePod owner said he walked into an Apple retail store and was advised "to pay almost full price to replace an abandoned product" because the warranty had expired.  Another similarly complained, the "[s]ame happened to me two days ago. Apple basically told me to buy another one since my warranty expired 6 months ago and service fee is $280."

16.    It is unfair to force someone to pay upwards of $300 for a HomePod replacement when a software update from Apple is what broke the HomePod in the first place.

17.    Planned obsolescence is a business strategy in which the obsolescence (the process of becoming obsolete, that is, unfashionable or no longer usable) of a product is planned and built into it from its conception, by the manufacturer. This is done so that, in the future, the consumer feels a need to purchase new products and services that the manufacturer brings out as replacements for the old ones.

18.    Planned obsolescence is part of Apple's business model.

19.     Apple has in the past faced several lawsuits in the United States and Europe alleging that Apple engaged in practices designed to force consumers to buy new Apple products before they would otherwise have to.

20.     Through this business strategy, Apple bricked the original HomePods, or alternatively, it decided not to provide a remedy for the problems caused by software update 14.6, because Apple had discontinued the original HomePods and wanted consumers to purchase the newer HomePod minis.

21.     If owners of original HomePods replaced their broken systems with HomePod minis, then Apple would sell more HomePod minis and profit from those sales.

**PARTIES**

22.     Plaintiff Barry Richards is domiciled in North Carolina, and lives in Randleman, North Carolina.

23.     In or around October 2019, Plaintiff purchased an original Apple HomePod from a store called Other World Computing for his personal use.  Initially, the HomePod worked fine and as intended.  After his HomePod automatically received the 14.6 software update, it malfunctioned and would not reset.  Plaintiff took the device to an Apple Authorized Service Provider for repair and was told that the Provider would match Apple's cost of $279 to repair the device.  Plaintiff has lost the use of his HomePod as a result of the 14.6 software update.

24.     Defendant Apple, Inc. is incorporated under the laws of the State of California.

25.     Apple maintains its principal place of business in Cupertino, California.

26.     Apple manufactures Apple HomePods.

27.     Apple distributes Apple HomePods to retailers throughout the United States.

28.     Apple sells Apple HomePods directly to consumers in the United States through its Apple stores and on Apple's website.

**JURISDICTION AND VENUE**

29.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most

members of the proposed class, are citizens of states different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

30.     This Court has personal jurisdiction over Apple because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

31.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

32.     Employees at Apple's headquarters directed the production and assembly of the Apple HomePod hardware and software, including all software updates.

33.     Promotional activities and literature were developed and coordinated at, and emanated from, Apple's California headquarters.

34.     The decision to issue software update 14.6 for the Apple HomePod was made in California.

35.     Software update 14.6 for the Apple HomePod was developed in California.

36.     The steps and procedures taken to issue software update 14.6 for the Apple HomePod were made in California.

37.     Software update 14.6 was transmitted from California to putative class members' Apple HomePods.

38.     California is where Apple employees made the final decision to deny relief to putative class members whose HomePods were adversely affected by software update 14.6.

## CLASS ALLEGATIONS

39.     Plaintiff brings this lawsuit under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and/or (b)(3) as representatives of:

**Nationwide Class:**
All persons within the United States who purchased, other than for resale, an Apple Home Pod.

**California Subclass:**
All persons who purchased, other than for resale, within California, an Apple Home Pod.

**North Carolina Subclass:**
All persons who purchased, other than for resale, within North Carolina, an Apple Home Pod.

40.     The following persons and entities are excluded from the Class: Apple and its officers, directors, employees, subsidiaries, and affiliates; all judges assigned to this case and any members of their immediate families; and the parties' counsel in this litigation.

41.     Plaintiff reserves the right to modify, change, or expand the Class definition, including proposing additional subclasses, based upon discovery and further investigation.

42.      **Numerosity.**  Apple sold tens of thousands of the Devices.  Members of the Classes are widely dispersed throughout the country.  Class members are so numerous that joinder is impracticable.

43.     **Typicality.**  Plaintiff's claims are typical of the claims of all Class members. Plaintiff, like all Class members, purchased the Device, later rendered inoperable by the 14.6 update.   Plaintiff, like all Class members, would not have purchased, or would have paid substantially less for, the Device, had he known of the Defect or that Apple would respond inadequately when the Defect manifested.

44.     **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class.  He has no interests antagonistic to the interests of the other Class members and are committed to vigorously prosecuting this case.   Plaintiff has retained competent counsel experienced in the prosecution of consumer protection class actions involving defective consumer electronics.

45.     **Commonality and Predominance.**  Questions of law and fact common to the class members predominate over questions that may affect only individual Class members, because Apple acted on ground generally applicable to the Class as a whole.   Questions of law and fact common to the Class include:

> b.     Whether the Defect substantially impairs the value of the Device;
>
> d.     Whether a reasonable consumer would consider the Defect and its consequences important to the decision of whether to purchase the Device;

f.   Whether Plaintiff and Class members overpaid for their Devices as a result of the Defect;

g.   Whether Plaintiff and Class members are entitled to equitable relief, including restitution and injunctive relief; and

h.   Whether Plaintiff and Class members are entitled to damages or other monetary relief, and if so, in what amount.

46.   **Superiority.**   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Apple's financial resources, Class members are not likely to pursue legal redress individually for the violations detailed in this Complaint.   Individualized litigation would significantly increase the delay and expense to all parties and to the Court and would create a potential for inconsistent and contradictory rulings.   By contrast, a class action presents far fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

47.   Class certification is also appropriate under Rules 23(b)(1) and/or 23(b)(2) because:

a.   The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standard of conduct for Apple;

b.   The prosecution of separate actions by individual Class members would create a risk of adjudication that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests; and

c.   Apple has acted and refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION
### Trespass to Chattels

48.     All allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

49.     This cause of action is brought on behalf of all putative classes alleged in this complaint.

50.     Putative class members maintained actual or constructive possession of their Apple Home Pods when Apple issued the 14.6 software update.

51.     Putative class members did not consent to having the 14.6 software update interfere or disrupt the functionality of their Apple Home Pods.

52.     Apple's interference was the actual and proximate cause of injury to putative class members because it actually and substantially harmed the functioning of the Apple Home Pods. The 14.6 software update significantly impaired the Apple Home Pods' condition, quality, and value.  Apple's interference also deprived putative class members of the use of their personal property.

53.     As a part of Apple's business strategy, Apple knew that its conduct would cause injury to putative class members.  Defendants acted with conscious disregard for the rights of putative class members.

54.     As a result of Apple's interference with the Apple Home Pods, putative class members are entitled to recover their actual damages in an amount to be determined at trial, as well as punitive damages.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

55.     All allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

56.     This cause of action is brought on behalf of all putative classes alleged in this complaint.

57.     To the extent required by law, Plaintiff brings this claim in the alternative to the legal claims.

58.     Putative class members purchased Apple's Apple HomePods.

59.     Apple profits when people purchase Apple HomePods from Apple.

60.     Had putative class members known that Apple would later issue an automatic software update that would impair the functionality of the Apple HomePods, they would have paid less for their Apple HomePods or would not have bought them at all.

61.     Apple has been unjustly enriched by retaining profits derived from putative class members' purchases of Apple Home Pods.  Retention of profits under the circumstances here is unjust because Apple impaired or destroyed the functionality of Apple HomePods, which caused putative class members to suffer a diminution in value of their HomePods.

62.     Retention of those profits also is unjust because Apple has not provided adequate relief to putative class members whose HomePods were adversely affected by the software update at issue here.

63.     Putative class members have suffered an injury in fact and have lost money as a result of Apple's unjust conduct in that they paid more for Apple HomePods than their fair value as a result of Apple's harmful software upgrade, and were deprived of the use of their HomePods. Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutional disgorgement of the financial profits that Apple obtained as a result of its unjust conduct.

### **THIRD CAUSE OF ACTION**
**Violation of  the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B)-(C)**

64.     All allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

65.     This cause of action is brought on behalf of all putative classes alleged in this complaint.

66.     Apple HomePods are computers and protected computers under the Computer Fraud and Abuse Act.

67.     All putative class members are persons under the Computer Fraud and Abuse Act.

68.     Defendant automatically uploaded software update 14.6 to Apple HomePods.

69.     Software update 14.6 impaired the integrity and availability of the Apple HomePods, as well as the data, programs, systems, and information on the Apple HomePods.

70.     By automatically uploading software update 14.6 to Apple HomePods, Defendant intentionally accessed class members' computers without authorization, and as a result of such conduct, causes damage and loss to putative class members.   In the alternative, Defendant's conduct in uploading software update 14.6 recklessly caused damage to putative class members.

71.     The 14.6 software update caused a loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value.

72.     Plaintiff seeks all available relief under the Computer Fraud and Abuse Act.

**FOURTH CAUSE OF ACTION**
**California's Computer Data Access and Fraud Act, Cal. Penal Code**
**§ 502(c)(4), (c)(5), (c)(7), and (c)(8)**

73.     All allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

74.     This cause of action is brought on behalf of all putative classes alleged in this complaint.

75.     Apple HomePods are computers and computer systems under the Computer Data Access and Fraud Act.

76.     Defendant automatically uploaded software update 14.6 to Apple HomePods.

77.     Software update 14.6 is a computer contaminant under the Computer Data Access and Fraud Act.

78.     Software update 14.6 damaged data, computer software or computer programs residing in the Apple HomePods, which were necessary for the proper functionality of the Apple HomePods.

79.     Software update 14.6 disrupted or caused the disruption of computer services from Apple HomePods, and caused the denial of computer services to authorized users of the Apple HomePods.

80.     By automatically uploading software update 14.6, Defendant knowingly and without permission accessed the Apple HomePods.

81.     By automatically uploading software update 14.6, Defendant knowingly introduced a computer contaminant into the Apple HomePods.

82.     By automatically uploading software update 14.6 to Apple HomePods, Defendant intentionally accessed class members' computers without authorization, and as a result of such conduct, causes damage and loss to putative class members.   In the alternative, Defendant's conduct in uploading software update 14.6 recklessly caused damage to putative class members.

83.     The 14.6 software update caused a loss to 1 or more persons during any 1-year period aggregating at least $5,000 in value.

84.     Plaintiff seeks all available relief under the Computer Data Access and Fraud Act.

### FIFTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq*.**

85.     All allegations contained in the preceding paragraphs are incorporated by reference as if fully set forth herein.

86.     This cause of action is brought on behalf of all putative classes alleged in this complaint.

87.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

88.     This cause of action is brought under the "unfair" and "unlawful" prongs of the UCL.

89.     Apple engaged in unfair conduct, first by issuing a software update that impaired the functionality of Home Pods, and then by failing to provide adequate remedies to putative class members for their loss of use of the Home Pods.

90. Apple's conduct is unlawful, in violation of the UCL, because it violates the statutes and common law causes of action at issue here.

91. Apple's conduct is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

92. The gravity of harm resulting from Apple's unfair conduct outweighs any potential utility.

93. The injury to putative class members was substantial, and not outweighed by any countervailing benefits to consumers or competition.

94. The harm from Apple's conduct was not reasonably avoidable by consumers.

95. Plaintiff seeks all available relief under the UCL, including injunctive relief.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the alleged putative classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as class representative, and Bursor & Fisher, P.A. as Class Counsel to represent the proposed classes;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and all putative classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For restitution and non-restitutionary disgorgement of financial profits.

(f) For prejudgment interest on all amounts awarded;

(g) For injunctive relief as pleaded or as the Court may deem proper;

(h) For an order awarding Plaintiff and members of the Class and Subclass their reasonable attorneys' fees and reimbursement of litigation expenses and costs of suit; and

1           (i)       For such other and further relief as the Court may deem proper.

Dated: February 22, 2022                   Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Joel D. Smith*
          Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
       jsmith@bursor.com
       slitteral@bursor.com

*Attorneys for Plaintiff and the Putative Class*